Sean P. DeBruine (SBN 168071)(sdebruine@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
3000 El Camino Real
Two Palo Alto Square, Suite 400
Palo Alto, CA 94306
Telephone: (650) 838-2000
Facsimile: (650) 838-2001

Steven M. Zager (*pro hac vice*)(szager@akingump.com)
Michael Simons (*pro hac vice*)(msimons@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

Michael A. O'Shea (*pro hac vice*)(moshea@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Attorneys for Plaintiffs
MEDTRONIC, INC.,
MEDTRONIC VASCULAR, INC.,
MEDTRONIC USA, INC.,
MEDTRONIC VASCULAR GALWAY, LTD.,
MEDTRONIC SOFAMOR DANEK, INC., and
SDGI HOLDINGS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| MEDTRONIC, INC.,<br>MEDTRONIC VASCULAR, INC.,<br>MEDTRONIC USA, INC.,<br>MEDTRONIC VASCULAR GALWAY, LTD.,<br>MEDTRONIC SOFAMOR DANEK, INC., and<br>SDGI HOLDINGS, INC.<br><br>Plaintiffs,<br><br>v.<br>KYPHON INC.,<br><br>Defendant. | **CASE NO. C06-02559 SI**<br><br>**PLAINTIFFS' *MARKMAN* REPLY BRIEF** |

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................7

    A.   Kyphon's Concessions ....................................................................................7

    B.   Kyphon's Current Arguments Are Inconsistent with its Prior Litigation Positions, Which Advocated for Medtronic's Legal Position. ...................7

    C.   Kyphon's Unlimited Disclaimers ....................................................................9

II.  BALLOON/DILATATION CATHETER.................................................................9

    A.   The Preamble Terms Are Not Limitations To The Claims...............................9

    B.   Antecedent Basis...........................................................................................10

    C.   "Singular Focus" In The Specification .........................................................11

    D.   There Was No Disclaimer in the Prosecution History. ...............................12

        1.   There Was No Disavowal in the Prosecution of the '349 Patent...............13

        2.   There Was No Disavowal in the Prosecution of the '191 and '856 Patents14

III. THE '173 PATENT:  "SPHERICAL SHAPE" ....................................................15

IV.  THE CLAIM TERMS IN THE '349 PATENT ARE CLEAR FROM THE CLAIM LANGUAGE. ..............................................................................................17

    A.   "sleeve"..........................................................................................................17

    B.   "balloon portion"/"balloon"..........................................................................17

    C.   "both the sleeve and balloon being collapsible about the shaft" ..................19

V.   THE CLAIM TERMS IN THE '191 AND '856 PATENTS ARE CLEAR FROM THE CLAIM LANGUAGE .........................................................................21

    A.   "catheter shaft" ('191 patent/'856 patent)....................................................22

    B.   "proximal region" ('191 patent/'856 patent) ................................................23

    C.   "guidewire lumen" ('191 patent/'856 patent)...............................................26

    D.   "means for communicating the annular inflation lumen with the interior of the balloon to facilitate inflation and deflation of the balloon, the inflation lumen comprising the sole lumen in communication with the interior of the balloon" ('191 patent)..................................................................................26

        1.   This Element Is Not Subject to § 112 ¶ 6. ..............................................26

        2.   If The Term is Interpreted Under § 112 ¶ 6, Medtronic's Position Remains Correct.........................................................................................28

    E.   "means at the proximal end of the catheter for accessing

---

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF          C06-02559 SI

- each of the guidewire and inflation lumens" ('191 patent)
- the inflation lumen" ('856 patent)................................................30
  1.    These Limitations Are Not Subject to § 112 ¶ 6.......................30
  2.    If The Term is Interpreted Under § 112 ¶ 6, Medtronic's Position Remains Correct................................................................31

F.    "at least one aperture associated with the outer tube to facilitate inflation and deflation of the balloon" ('856 patent)................................................32

VI.   CONCLUSION................................................................33

1

2

## **TABLE OF AUTHORITIES**

3

### **CASES**

*3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003).......... 13, 20

*ASM Am., Inc. v. Genus, Inc.*, 260 F. Supp.2d 827 (N.D. Cal. 2002) ......................................... 28

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) ..................................................... 11

*Brookhill-Wilk 1, LLC v. Intuitive Surg., Inc.*, 334 F.3d 1294 (Fed. Cir. 2003) ................... 11, 26

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002)......... 9, 10, 11

*Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352 (Fed. Cir. 2003) ....................................... 21

*Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317 (Fed. Cir. 2001).................. 20, 21

*DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314 (Fed. Cir. 2001)........................................ 22

*Dow Chemical Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364 (Fed. Cir. 2001) ........................... 15

*Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332 (Fed. Cir. 2003) ........................................ 11

*E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364 (Fed. Cir. 2001). ......................................... 21

*Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158 (Fed. Cir. 2004) ..................................................... 17

*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004) ..................................... 21

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951 (Fed. Cir. 2000)............... 16

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000) ..................... 11

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) ... 19

*Intertrust Techs. Corp. v. Microsoft Corp.*, 275 F.Supp.2d 1031 (N.D. Cal. 2003) .................... 14

*Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365 (Fed. Cir. 2002)20, 25

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed. Cir. 2000)  ............................... 10

*Ishida Co. Ltd. v. Taylor*, 221 F.3d 1310 (Fed. Cir. 2000) .......................................................... 28

*Kemco Sales, Inc. v. Control Papers Co.*, Inc., 208 F.3d 1352 (Fed. Cir. 2000).................. 29, 32

*Kyphon, Inc. v. Disc-O-Tech Med. Techs. Ltd.*, No. 04-204-JJF (D. Del.).................................... 8

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) ................................... 8, 15

*McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110 (1895).......................................................... 21

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313 (Fed. Cir. 2005)......................................... 26

*Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340 (Fed. Cir. 2004)........................... 24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

*Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 311 F.3d 1384 (Fed. Cir. 2003)...................9

*N. Telecom Ltd. v. Samsung Elecs Co., Ltd.*, 215 F.3d 1281 (Fed. Cir. 2000) .............................9

*Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346 (Fed. Cir. 2003)......................... 29, 31

*Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ..................... 12, 22, 29, 31

*Pall Corp. v. PTI Techs. Inc.*, 259 F.3d 1383 (Fed. Cir. 2001)....................................................24

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 12, 19

*PTI Techs., Inc. v. Pall Corp.*, 535 U.S. 1109 (2002)................................................................24

*Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ......................32

*Roberts v. Ryer*, 91 U.S. 150 (1875)........................................................................................12

*Salazar v. Procter & Gamble Co.*, 414 F.3d 1342 (Fed. Cir. 2005)............................................13

*Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278 (Fed. Cir. 2005) .................................21

*Schumer v. Laboratory Comp. Sys., Inc.*, 308 F.3d 1304 (Fed. Cir. 2002) ......................... 10, 11

*Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318 (Fed. Cir. 2002) ........... 12, 13

*Smith v. Snow*, 294 U.S. 1 (1935) ..............................................................................................9

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) ...............................19

*Springs Window Fashions LP v. Novo Indus. LP*, 323 F.3d 989 (Fed. Cir. 2003) .....................24

*Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823 (Fed. Cir. 2003) ...................................20

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ................................ 21, 26

*Toro Co. v. White Consul. Indus. Inc.*, 266 F.3d 1367 (Fed. Cir. 2001) .....................................26

*Torpharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322 (Fed. Cir. 2003) ...............................22

*Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370 (Fed. Cir. 2000)..................18

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991)10, 11

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. 2006) ........23

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| "Medtronic" | Plaintiffs Medtronic, Inc., Medtronic Vascular, Inc., Medtronic USA, Inc., Medtronic Vascular Galway, Ltd., Medtronic Sofamor Danek, Inc., and SDGI Holdings, Inc. |
| "Kyphon" | Kyphon, Inc. |
| "Medtronic's Opening Brief"/"(M. Br.)" | Medtronic's *Markman* Opening Brief |
| "Kyphon's Responsive Brief"/"(K. Br.)" | Kyphon Inc.'s Responsive Claim Construction Brief |
| "DeBruine Decl." | Declaration of Sean P. DeBruine in Support of Medtronic's Reply *Markman* Brief |
| "'173 patent" | U.S. Patent No. 5,759,173 to Preissman *et al.* |
| "'349 patent" | U.S. Patent No. 4,820,349 to Saab |
| "'191 patent" | U.S. Patent No. 5,759,191 to Barbere |
| "'856 patent" | U.S. Patent No. 6,179,856 to Barbere |
| "Medtronic patents" | The '173, '349, '191 and '856 patents |
| "Pope patent" | U.S. Patent No. 4,715,378 to Pope, Jr. *et al.* |
| "Simpson patent" | U.S. Patent No. 4,323,071 to Simpson *et al.* |
| "Yock patent" | U.S. Patent No. 5,061,273 to Yock |
| "Hattler patent" | U.S. Patent No. 4,406,656 to Hattler *et al.* |
| "Corday patent" | U.S. Patent No. 4,689,041 to Corday *et al.* |
| "Kletschka patent" | U.S. Patent No. 4,794,928 to Kletschka |
| "Nobuyoshi patent" | U.S. Patent No. 5,250,069 to Nobuyoshi *et al.* |

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF

C06-02559 SI

1

2

## I.    INTRODUCTION

The claims asserted in this case have broad, clear language and cover Kyphon's balloon dilatation catheters.  Kyphon's Responsive Brief uses two strategies to try to circumvent this broad, clear claim language.  First, Kyphon seeks to narrow the claims by importing non-existent limitations and arguing for five separate prosecution disclaimers.  In fact, Kyphon somehow finds a disclaimer in every claim at issue.  Second, Kyphon simply ignores Medtronic's positions for which it has no answer.  As such, much of Medtronic's Opening Brief is undisputed.

Neither of Kyphon's strategies succeeds.  The claims are broad, unencumbered by Kyphon's imaginary limitations and disclaimers.  Furthermore, Medtronic's Opening *Markman* Brief established that the terms at issue should be given their plain and ordinary meaning based on an analysis of the intrinsic evidence.  Most importantly, Medtronic established that the language of the claims, both asserted and unasserted, supports these interpretations.

### A.    Kyphon's Concessions

Kyphon's Responsive Brief fails to address many of Medtronic's positions.  As such, much of Medtronic's Opening Brief is undisputed.  For example, other than in a single desultory footnote, Kyphon simply concedes ***all*** of Medtronic's claim differentiation arguments.  (*See* K. Br. at 13 n.13.)  Kyphon similarly failed to address, in any meaningful way, and thus concedes Medtronic's arguments that the terms that Kyphon contends are governed by 35 U.S.C. § 112 ¶ 6 actually recite sufficient structure within the claims themselves to perform the function and, therefore, are not means-plus-function terms.  (*See id.* at 20.)  Kyphon concludes this entire "argument" with the unsupported conclusion that "'[o]penings' alone are not sufficient to access the lumens." (*Id.*)  Kyphon has also conceded, by failing to rebut, that a "sleeve" need not be tubular.  (S*ee* K. Br. at 8-12.)  These omissions from Kyphon's Responsive Brief should be deemed concessions in Medtronic's favor.

### B.    Kyphon's Current Arguments Are Inconsistent with its Prior Litigation Positions, Which Advocated for Medtronic's Legal Position.

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                                    C06-02559 SI

Additionally, Kyphon's Responsive Brief seeks to limit the broad structural language of the Medtronic claims by improperly adding non-existent limitations.  However, Kyphon, using the same lawyers from the same law firm, vehemently argued ***against*** this type of claim interpretation law in a prior case in which it was the patent owner, not the alleged infringer.  In *Kyphon, Inc. v. Disc-O-Tech Med. Techs. Ltd.*, No. 04-204-JJF (D. Del.), Kyphon argued that

> **'Specifications teach.  Claims claim'**
>
> The text and figures of a patent's specification explain the particular approach that the patentee believes is the best mode of practicing the invention, and provide sufficient detail to teach others how to practice the best mode of the invention.  The claims, however, are what actually define the invention.
>
> *      *      *      *      *      *
>
> We may take it that, as the statute requires, the specifications just detailed show a way of using the inventor's method and that he conceived that particular way described was the best one.  But he is not confined to that particular mode of use since the claims of the patent, not its specifications, measure the invention.
>
> *Smith v. Snow*, 294 U.S. 1, 11 (1935) (citations omitted)

(*See* DeBruine Decl.*,* Ex. X, Kyphon's Opposition to DOT's Proposed Claim Construction ("Kyphon's DOT Opposition"), April 14, 2005 at 1.)  Kyphon reiterated this point on the next page of its brief in that case:

> Or, as Chief Judge Markey of the Federal Circuit has simply put it: 'Specifications teach.  Claims claim.'
>
> DOT disregards the plain, ordinary meaning of the claim terms, and reads limitations into the claims from the specification.

(Id. at 2.)

In oral argument in the same case, Kyphon stated that the authority now relied upon by Medtronic, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004), is controlling in this situation:

> The take away from that is, especially in a case where the claims started out narrower and ended up broader, courts just don't turn back the clock absent just a compelling, compelling reason.  And you – here again my favorite case, *Liebel-Flarsheim*, there are other cases we have cited that say the same thing.

1   DeBruine Decl., Ex. Y, April 19, 2005 Transcript at 32:16-22. Thus, Kyphon has recently, and

2   successfully argued the correctness and applicability of Medtronic's legal position. Kyphon's new,

3   inconsistent positions in this case should therefore be rejected.

4   **C.    Kyphon's Unlimited Disclaimers**

5          Kyphon seeks to limit the broad structural applicability of the claims by asserting at least five

6   separate instances of prosecution history disclaimer; Kyphon argues that every single patent in this

7   case has a prosecution history disclaimer for the claims at issue. Each of Kyphon's assertions falls far

8   short of the Federal Circuit's standard of a clear and unambiguous disavowal of claim scope.

9   *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 311 F.3d 1384, 1388-89 (Fed. Cir. 2003); *N.*

10  *Telecom Ltd. v. Samsung Elecs Co., Ltd.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000). Each of the cited

11  prosecution history sound bites cited by Kyphon is too slender a reed to constitute a clear and

12  unmistakable surrender of claim scope.

13  **II.    BALLOON/DILATATION CATHETER**

14         Medtronic's Opening Brief established that the plain and ordinary meaning of a "balloon

15  dilatation catheter" is simply a "catheter capable of being inserted into a body cavity, the catheter

16  having a member that is capable of enlarging." (M. Br. at 6-10.) Kyphon did not propose an

17  alternative plain and ordinary meaning, arguing instead for an unsupportable specialized meaning: "a

18  catheter for dilating a constricted blood vessel." Medtronic's plain and clear claim construction is

19  correct.

20         Kyphon also did not contest Medtronic's interpretation of "balloon catheter" in the '173 patent

21  ("a catheter capable of being inserted into a body cavity, the catheter having a member that is capable

22  of enlarging"). (*See* K. Br. at 22 n.20.) Thus, "balloon catheter" is no longer in dispute, and the only

23  preamble terms at issue are "dilatation catheter" in the '349 patent and "balloon dilatation catheter" in

24  the '191 and '856 patents.

25         **A.    The Preamble Terms Are Not Limitations to the Claims.**

26         The preambles at issue are not limitations because "the claim body describes a structurally

27  complete invention such that deletion of the preamble phrase does not affect the structure or steps of

28

1  the claimed invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809-10

2  (Fed. Cir. 2002).

3      The preambles of the three independent claims asserted in this case are "[a] dilatation catheter

4  comprising" ('349 patent/claim 1); "[a] two tube, two lumen coaxial balloon dilatation catheter

5  comprising" ('191 patent/claim 1); and "[a] balloon dilatation catheter comprising" ('856 patent/claim

6  9). None of these preambles recites "essential structure or steps" and none is "necessary to give life,

7  meaning and vitality to the claims." Accordingly, none of these preambles is a limitation to the claims.

8  *See Catalina*, 289 F.3d at 809-10.

9      Kyphon failed to address the cases cited by Medtronic as support, including *Vaupel*

10  *Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879-80 (Fed. Cir. 1991) (preamble

11  reciting "a breast beam" was not a limitation on a claim reciting "the breast beam" because it merely

12  provided a directional reference point for construction of the claim), and *Schumer v. Laboratory Comp.*

13  *Sys., Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002) (describing as "superfluous" a preamble recitation

14  regarding "a coordinate system" when body of claim referred to "the coordinate system"); *IMS Tech.,*

15  *Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000) ("'control apparatus'" in the

16  preamble merely gives a descriptive name to the set of limitations in the body of the claim that

17  completely set forth the invention" and is not a limitation). Those cases are on point here: the

18  applicant did not use ***both*** the preamble and the body of the claim to define structural limitations of the

19  claimed invention and thus the preamble is not a limitation of the claim.

20      Further, Kyphon fails to distinguish *Catalina*, and mistakenly states that the case stands for the

21  broad proposition that "statements of use in the preamble limit apparatus claims when an applicant

22  relies on those uses to distinguish prior art during prosecution." (K. Br. at 8.) In fact, *Catalina*

23  provides that "statements of intended use or asserted benefits in the preamble ***may, in rare instances***,

24  limit apparatus claims, but only if the applicant ***clearly and unmistakably*** relied on those uses or

25  benefits to distinguish prior art." 289 F.3d at 809 (emphasis added). Not surprisingly given that high

26  standard, the Court in *Catalina* determined that the case was not a "rare instance" and found that the

27  disputed preamble language was not a limitation to the claims. *Id.* at 810.

28      **B.    Antecedent Basis**

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                                    C06-02559 SI

Kyphon argues that the mere mention of "the catheter" in the body of the asserted claims provides the necessary "antecedent basis" for the preamble to be a limitation.  (K. Br. at 7.)  That is not the law.  *See Vaupel*, 944 F.2d at 879-80 (preamble reciting "a breast beam" was not a limitation on a claim reciting "the breast beam" because it merely provided a directional reference point for construction of the claim); Schumer, 308 F.3d at 1310 (describing as "superfluous" a preamble recitation regarding "a coordinate system" when body of claim referred to "the coordinate system").  And the cases cited by Kyphon do not support Kyphon's argument here.  *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952-53 (Fed. Cir. 2006) (holding that preamble reciting structural elements such as a "frusto-spherical basal surface" and height limitations for an abutment not found in the body of the claim for an emergence cuff was a limitation because the drafter used **both** the body and the preamble to define his invention); *Eaton Corp. v. Rockwell Int'l Corp*, 323 F.3d 1332, 1340 (Fed. Cir. 2003) (holding that a preamble was limitation on the claim where "[t]he method steps of claim 14 thus require the manipulation of particular structures that are identified and described only by the preamble, during a particular sequence of events defined only by the preamble" because "[c]laim 14 is an example of the claim drafter choosing to use both the preamble and the body to define the subject matter of the claimed invention") (citations and quotations omitted; emphasis added).  This is simply not the case in the preambles of the asserted claims.  *See Vaupel*, 944 F.2d at 880; *Schumer*, 308 F.3d at 1310.

## C.    "Singular Focus" in the Specification

Kyphon argues that the specifications in the '349, '191, and '856 patents have a "singular" focus on the vascular system.  Although the catheters disclosed in the specification were developed for use in the vascular system, the applicants never disclaimed non-vascular use.  Regardless, as Medtronic established in its Opening Brief, the law is clear that an intended use is ***not*** to be imported into the claims.  *Brookhill-Wilk 1, LLC v. Intuitive Surg., Inc.*, 334 F.3d 1294, 1301 (Fed. Cir. 2003) ("Absent a clear disclaimer of particular subject matter, the fact that the inventor anticipated that the subject matter may be used in a particular manner does not limit the scope to that narrow context.").  Moreover, all of the asserted claims are apparatus claims that have no required use.  (M. Br. at 7-8.) ("[T]he inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter

whether he had conceived the idea of the use or not."  *Catalina*, 289 F.3d at 809, quoting *Roberts v. Ryer*, 91 U.S. 150, 157 (1875).)

Kyphon quotes language from the '349 patent in an effort to support its "singular" focus position.  However, the language demonstrates no such singular focus because it states only that one use of a balloon catheter is angioplasty:

> The invention related to improvements in balloon dilatation catheters BI those used in angioplasty procedures and particularly percutaneous transluminal coronary angioplasty.  (K. Br. at 7) (emphasis added).

Moreover the '349 patent specification later states that the preferred embodiments are not to be limited only to the uses disclosed.  (M. Br. at 8, Ex. B, '349 patent, Col. 8, lines 27-31.)  The same is true for the '191 and '856 patents.  (M. Br. at 8.)

**D.      There Was No Disclaimer in the Prosecution History.**

As explained above, Kyphon does not dispute Medtronic's interpretation of the plain and ordinary meaning of "dilatation catheter" or "balloon dilatation catheter."  However, Kyphon argues that "dilatation catheter" and "balloon dilatation catheter" should be narrowly interpreted due to alleged prosecution disclaimer.  Kyphon's arguments fall far short of the Federal Circuit's standard set forth in *Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003):

> To balance the importance of public notice and the right of patentees to seek broad patent coverage, we have thus consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope.  *E.g. Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324-25, 64 USPQ2d 1641, 1645 (Fed. Cir. 2002) ("[P]rosecution history … cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter.").

*See also Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it *often lacks the clarity of the specification and this is less useful for claim construction purposes*.") (emphasis added).

Here, it is clear that a competitor would not believe a disavowal had occurred.  In fact, both of the prior art references cited by Kyphon disclose only use in the vascular system.  Thus, it is simply

1  not possible that non-vascular usage would have arisen during discussion of these references.  Further,

2  although several non-vascular catheters were cited as prior art in the prosecution of the patents-in-suit,

3  the applicants never distinguished such references based on use.  (M. Br. at 9.)

4       **1.     There Was No Disavowal in the Prosecution of the '349 Patent.**

5       During prosecution of the '349 patent, the Hattler patent was distinguished from the claims

6  because Hattler disclosed only an "infusion" catheter with a sleeve that is open at its distal (far) end,

7  rather than a closed sleeve as required by the claims.  (*See* claim 1, "the distal end of the sleeve being

8  attached to the distal end of the shaft.")  This distinction is crucial: the sleeve in Hattler could not

9  inflate ("dilate") as required by the claims in response to pressure because it was not closed at its distal

10  end.

11       The statement relied on by Kyphon explains the distinction: "[t]he Hattler catheter is not a

12  dilatation catheter intended for use in dilatation of arteries or angioplasty procedures.  Rather it is

13  directed to an infusion catheter in which the lumens are open at the distal end of the catheter to permit

14  infusion of liquids or the like into the veins."  (K. Br. at 8.)

15       As an "infusion" catheter, it has an ***open*** sleeve that infuses the body cavity with a fluid such as

16  a drug.  Thus, the preamble in claim 1 of the '349 patent ("A dilatation catheter comprising") was

17  irrelevant to the Hattler distinction.  Although a "dilatation catheter" is a device with a closed sleeve,

18  the body of the claim specifically requires a sleeve that is closed.  It was thus the ***body*** of the claim –

19  not the preamble – that made this simple distinction.

20       Moreover, the language referenced by Kyphon supports only that the applicant argued that

21  Hattler did not disclose use in the dilatation of arteries or during angioplasty.  The converse – that all

22  uses other than angioplasty or in the dilatation of arteries are not available to the applicant – is simply

23  not supported by the prosecution history.  Hattler involved only venous use.  There was no disavowal

24  of non-venous use in distinguishing the reference.  Thus, Kyphon's attempt to limit the '349 patent

25  claims to only vascular use is manifestly contrary to the prosecution.  The applicant did not clearly and

26  unambiguously ***state*** what Kyphon argues.  *See* generally *Salazar v. Procter & Gamble Co.*, 414 F.3d

27  1342, 1345 (Fed. Cir. 2005); *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-

28  74 (Fed. Cir. 2003); *Schwing*, 305 F.3d at 1324-25.

1    Claim 10 of the '349 patent depends from claim 1 and adds only the limitation of use in

2  angioplasty.  (*See* also claims 11-17.)  Medtronic's Opening Brief explained that claim differentiation

3  precludes Kyphon's interpretation here.  (M. Br. at 8.)  Kyphon did not dispute the position and cited

4  no authority to the contrary.  Thus, it is undisputed that claim differentiation controls.

5    Moreover, claims 10 and 11 (which add the angioplasty limitation) were pending in the '349

6  patent prosecution at the time the Hattler patent was distinguished.  (*See* Ex. E of K. Br. at 3 and 10.)

7  Accordingly, the applicant already had dependent claims limited to use in arteries and for performing

8  angioplasty and thus did not need to limit claim 1 in such a fashion.

9    **2.    There Was No Disavowal in the Prosecution of the '191 and '856 Patents.**

10    Kyphon also alleges a disclaimer in the '191 and '856 patents and cites to statements made in

11  the prosecution in arguing that the term "balloon dilatation catheter" should be limited to only vascular

12  use.  (*See* K. Br. at 12-13.)  However, the quoted statements are merely ***examples*** of use and thus are

13  not limiting.  Kyphon argues that the applicant "consistently represented his invention as limited to use

14  in the vascular system."  *Id.* at 12.  Kyphon's citation in support of this argument indicates only that

15  "telescoping presents difficulties ***particularly*** when the catheter is used in tortuous irregularly shaped

16  arteries."  *Id.* (emphasis added).  As this makes clear, the applicant never represented the invention as

17  limited to use in the vascular system – only that telescoping was a particular problem in such a use.

18  Indeed, Kyphon cites to no law for its proposition that referencing exemplary use is a disclaimer.  The

19  purported disclaimer thus fails.  *See Intertrust Techs. Corp. v. Microsoft Corp.*, 275 F.Supp.2d 1031,

20  1051 (N.D. Cal. 2003) ("[A]n argument that lacks appropriate supporting citations is no argument at

21  all").

22    Kyphon also incorrectly argues that the applicant disclaimed non-vascular use in distinguishing

23  the Corday patent.  The Corday patent does not disclose a "coaxial" catheter.  Because the claims

24  require a coaxial catheter, Corday is easily distinguished as an anticipatory prior art reference under 35

25  U.S.C. § 102.  The statement Kyphon points to concerned the applicant's position that Corday could

26  not be combined with the Kletschka patent in an obviousness analysis under 35 U.S.C. § 103 because

27  the Kletschka device was used in angioplasty and the Corday balloon was not used in angioplasty.  In

28

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                                    C06-02559 SI

1   fact, the balloon disclosed in Corday does not "dilate" anything.  The statements were solely made to

2   argue against combining Corday with an angioplasty reference.

3           Kyphon cites to the following language to support its position:

4               Although the Corday catheter has a balloon, it is for a completely
                different purpose, namely, for retroperfusion in which the balloon is
5               adapted to seal off a segment of a blood vessel temporarily while blood
                is perfused into the vessel.  The catheter in Corday is not intended to be
6               advanced into or through a stenosis and is not intended to serve a dilating
                function, to enlarge the flow lumen though a stenosis.  In short, the
7               Corday catheter is never subjected to the kind of use to which dilatation
                catheters are put and does not meet with the same problems.  (K. Br. at
8               12.)

9

10          Kyphon mistakenly describes that passage from the prosecution as a "disclaimer."  The

11  statement is far from a disclaimer; it was merely arguing against the combinability of the prior art, not

12  disclaiming the scope of the claims.  The Corday patent, like Hattler, only concerns use in the vascular

13  system.  Thus, there was never any distinction regarding use outside the vasculature.

14          Moreover, during prosecution of the '191 patent, claim 1 was amended to include a limitation

15  concerning angioplasty.  (M. Br. at 7.)  That limitation was later removed.  Although Medtronic

16  explained this part of the '191 patent prosecution in its Opening Brief, Kyphon chose to ignore it.

17  Importantly, this issue mirrors the one presented by the *Liebel-Flarsheim* case, where a jacket was

18  added to the claimed syringe and then later removed.  358 F.3d at 909.  The Federal Circuit held that

19  such broadening of a claim by removal of a limitation was proper.  *Id.* at 909 n.2.  Here, the removal of

20  the angioplasty limitation further undercuts Kyphon's argument that the applicant disclaimed all but

21  vascular use in light of the Corday patent.

22  **III.    THE '173 PATENT:  "SPHERICAL SHAPE"**

23          Medtronic's Opening Brief established that a catheter balloon must be attached to the shaft at

24  its proximal and distal ends; thus a balloon in the shape of a perfect three-dimensional sphere is not

25  possible.  (M. Br. at 11.)  Moreover, the dictionary definitions provided by Kyphon support a broad

26  interpretation of "spherical" as "sphere-like" ("having the form of a sphere *or one of its segments*";

27  "*any rounded body* approximately of this form").  *Id.*; emphasis added.

28          Medtronic also explained that Figure 1 discloses the preferred embodiment of the '173 patent

1    and that a claim interpretation that does not cover a preferred embodiment is rarely correct.  (M. Br. at

2    12.)  *Dow Chemical Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1378 (Fed. Cir. 2001).  Kyphon does

3    not dispute either the fact or the law on this point.  Because Kyphon's interpretation ("a globe or a

4    basketball") excludes Figure 1, it should be rejected.

5           The terms "globe" and "basketball" appear nowhere in the intrinsic evidence of the '173 patent.

6    In fact, Kyphon bases its interpretation on another lawsuit involving Medtronic.  (K. Br. at 23.)

7    However, the facts of that case are completely different than those here.  That case did not involve

8    balloon catheters and concerned completely different intrinsic evidence.  The ***facts*** of an unrelated case

9    cannot trump the intrinsic evidence of the '173 patent.  *Cf. Goldenberg v. Cytogen, Inc.*, 373 F.3d

10   1158, 1167-68 (Fed. Cir. 2004) (finding statements in another patent or its prosecution history

11   irrelevant to claim construction "[a]bsent a formal relationship or incorporation during prosecution" of

12   the patent at issue).

13          Kyphon also cites to *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 956

14   (Fed. Cir. 2000), stating that patent drawings are not held to a high standard of precision, and thus

15   alleges that Figure 1 should be ignored.  (K. Br. at 23.)  However, nothing in *Hockerson-Halberstadt*

16   holds, states, or otherwise indicates that a shape may not be inferred from a figure.  Moreover, Figure 1

17   is at the very center of this issue since the shape of the balloon depicted therein was expressly

18   identified as being "spherical" in the intrinsic evidence.  During prosecution, the applicant made clear

19   that the shape of the balloon in Figure 1 was covered by the "spherical shape" limitation of claim 1:

20   "The distal end of the catheter has a spherical expansible member (Fig. 1) …" (M. Br. at 13.)  Such

21   compelling intrinsic evidence renders Kyphon's cited case law irrelevant.

22          Kyphon further alleges that the applicant disclaimed a broad interpretation of "spherical shape"

23   through statements in the prosecution history.  However, no such disclaimer occurred.  The prior art

24   Nobuyoshi patent discloses only a soda can-like cylindrical balloon.  There is nothing remotely

25   spherical about it.  The distinctions made only concerned the non-cylindrical nature of the claimed

26   balloon.  (*See* M. Br. at 13.)  Although Kyphon mischaracterizes Medtronic's proposed interpretation

27   as a "football or a blimp" (K. Br. at 23.), Medtronic is not asserting "cylindrical" as an interpretation

28   for spherical.

1    Finally, according to Kyphon, the parties are not far apart on this interpretation.  (*See* K. Br. at

2    25 n.22.)  Medtronic seeks an interpretation of "spherical" that will encompass balloons similar in

3    shape to Figure 1.  Such a shape is "sphere-like" in that it is "any rounded body approximately of this

4    form."

5    **IV.    THE CLAIM TERMS IN THE '349 PATENT ARE CLEAR FROM THE CLAIM
6    LANGUAGE**

7        **A.    "sleeve"**

8        The only dispute between the parties here is that Kyphon proposes that the claimed sleeve be

9    "tubular" ("a tubular piece fitting over a rod or the like") while Medtronic proposes a similar structure

10   with no such limitation in its shape ("a structure that fits over another").

11   Medtronic has explained that the claim language does not limit the shape of the sleeve and, in fact,

12   requires that a portion of the sleeve be "an integral enlarged diameter balloon portion."  (M. Br. at 14-

13   15.)  Accordingly, there is no basis to import a non-existent limitation into the claim.

14   Kyphon does not argue in favor of its "tubular" definition.  Medtronic's points are thus undisputed.

15       **B.    "balloon portion"/"balloon"**

16       Medtronic proposes that "balloon portion" be interpreted as "the part of the sleeve with an

17   enlarged diameter."  Kyphon proposes that "the balloon is formed integrally with, but is distinct from,

18   the rest of the sleeve."

19       Medtronic's Opening Brief established that the "balloon portion" is part of the sleeve and not a

20   distinct element.  (M. Br. at 16-17.)  In fact, the claim language could not be more clear:

21           … the proximal end of the sleeve being attached to the shaft … the distal end of the
             sleeve being attached to the distal end of the shaft; the sleeve having an integral
22           enlarged diameter balloon portion…

23   (Ex. B, '349 patent, Col. 8, lines 42-48.)  Thus, the ends of the sleeve, not the middle balloon portion,

24   are attached to the shaft.  The claim language thus eliminates any possibility that the sleeve and

25   balloon portion are "distinct."  Kyphon's brief does not acknowledge these words in the claim, let

26   alone dispute Medtronic's analysis of them.

27       Likewise, the claim language requires an ***integral*** enlarged diameter balloon portion, rendering

28   Kyphon's interpretation further at odds with the claim language.  Kyphon did not even attempt to

1   dispute this point or the case law cited by Medtronic.  (*See* M. Br. at 16.)  Moreover, Kyphon did not

2   attempt to dispute that claim drafting parlance makes it clear that the "balloon" referred to later in the

3   claim is simply shorthand for the "integral enlarged diameter balloon portion."  (*Id.* at 16-17.)

4          Kyphon, however, alleges that the "sleeve" is a distinct element from the "balloon portion":

5          But the plain language of the claim, the written description, the figures,
           and the prosecution history all show that 'sleeve' and 'balloon' are not
6          interchangeable terms:  ***one refers to the non-balloon portion of the***
           ***sleeve (simply, the 'sleeve')*** and one refers to the 'balloon portion' of the
7          sleeve.  (K. Br. at 8.) (emphasis added)

8

9   This analysis turns the claim language on its head.  As demonstrated above, the "sleeve" is the entire

10  structure, which is attached to the shaft at both ends.  Kyphon, however, creates two "sleeves" in its

11  argument that a "***sleeve***" is "the non-balloon portion of the ***sleeve***."  This not only contradicts the plain

12  language of the claim, it is a nonsequitur.

13         Kyphon also cites to the claim language "both the balloon and sleeve" as support for its

14  position that these elements are distinct.  However, this language simply refers to the entire sleeve

15  (including the balloon portion).  Taken in context, the language of the claim leaves no doubt that the

16  "balloon portion" and "sleeve" are integral and ***not*** distinct.

17         Indeed, Kyphon concedes the integral nature of the sleeve and balloon.  As Kyphon recognizes

18  in its brief, the sleeve has an integral enlarged diameter balloon portion formed all of the same

19  material.  (K. Br. at 9; Ex. B, '349 patent, Col. 8, lines 47-53.)  Contrary to Kyphon's assertion that the

20  claim language precludes "an inflatable/deflatable balloon alone, in the absence of a distinct non-

21  balloon sleeve portion, from satisfying both the sleeve and balloon limitations," nothing in the claim

22  language precludes the "sleeve" and the "balloon/balloon portion" from being unitary and coextensive.

23  Kyphon's assertion pre-supposes its own conclusion.

24         Furthermore, the other claims of the '349 patent clearly teach that the size of the "sleeve" may

25  vary.  Unasserted claim 18 requires an "elongate sleeve" while claim 1 only requires a "sleeve."

26  Further, claim 5 requires "a relatively short" sleeve.  Thus, the length of the "sleeve" is not a claimed

27  feature of the claim 1 invention, and Kyphon's attempts to make separate what is integral should be

28  disregarded.

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                              C06-02559 SI

Most telling is the fact that Kyphon completely ignores Medtronic's cited authorities as to the meaning of integral.  Integral means one single structure or formed of one piece.  *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1371 (Fed. Cir. 2000) (affirming district court claim construction that ordinary meaning of "integral" is "formed as a unit.").

The law supports Medtronic's proposed construction and rebuts Kyphon's attempts to import a limitation not present in the claims.  *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1324 (Fed. Cir. 2001) ("In approaching claim construction, we must always be conscious that our objective is to interpret the claims from the perspective of one of ordinary skill in the art, not from the viewpoint of counsel or expert witnesses retained to offer creative arguments in infringement litigation") (citation omitted).

## C.   <u>"both the sleeve and balloon being collapsible about the shaft"</u>

To meet this limitation, the sleeve and balloon portion must be capable of collapsing about the shaft.  Nothing further is required.  (M. Br. at 17-19.)  *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) ("… a claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to 'particularly point out and distinctly claim the subject matter which the patentee regards as his invention.'"); *see also Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms").

Additionally, the only limitation added by claim 19, which depends from claim 1, is a thickness limitation.  Thus, the doctrine of claim differentiation creates a presumption that there is no required wall thickness in claim 1.  (M. Br. at 18.)  Kyphon did not address claim 19 or attempt to argue against claim differentiation.  As such, the presumption is unrebutted and undisputed.

Kyphon's proposed construction for the term "both the sleeve and the balloon portion being collapsible about the shaft" recites a negative limitation that "a sleeve having a wall thickness of 0.0045 inches or more is not collapsible in the manner of the invention."  The sole basis for Kyphon's position is a distinction made in overcoming the Pope patent during the prosecution of the '349 patent. Kyphon's disclaimer position fails for several reasons.

1    First, Kyphon ignores the initial statement made by the applicant concerning Pope: that it,

2    along with the other cited references, does not disclose "a catheter having the combination of [1] the

3    shaft and [2] collapsible sleeve called for by the claims."  (M. Br. at 18.)  Indeed, this is the key to the

4    claim 1 invention:  a reduced profile at the distal end.  The Pope patent does not disclose a reduced

5    profile because its shaft does not have a smaller distal segment.  Without the first element, there is no

6    "reduced profile."

7    Second, the claims were not amended in view of Pope.  In fact, there is no thickness limitation

8    involved in the term at issue — "both the sleeve and balloon being collapsible about the shaft."

9    Kyphon believes that this is "beside the point."  (K. Br. at 12.)  This is not a clear disclaimer.

10   *Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1372 (Fed. Cir. 2002);

11   *c.f. Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1582 (Fed. Cir. 1995) ("Every statement

12   made by a patentee during prosecution to distinguish a prior art reference does not create a separate

13   estoppel") (citations and quotations omitted).

14   Third, although the thickness of the Pope sleeve was mentioned in overcoming the rejection,

15   the language used is far from a disavowal of claim scope.  Instead, the applicant was focused solely on

16   the Pope sleeve and argued that it was not collapsible.  There was no broad statement regarding the

17   thickness of another sleeve.

18   With respect to the embodiment of Figure 1, the specification teaches that "[a]s shown in Fig. 6

19   the sleeve 24 is ***collapsed closely*** about the distal shaft extension 16 ***and defines a diameter that is***

20   ***effectively the same as that of the distal shaft extension*** 16."  (Ex. B, Col. 7, lines 32-35; emphasis

21   added.)  The term "collapsible about the shaft," thus,  has been clearly defined in the specification.

22   The Federal Circuit has held that "[w]hen the patentee has expressly defined a term in the

23   specification and remarks made to distinguish claims from the prior art are broader than necessary to

24   distinguish the prior art, the full breadth of the remark is not a clear and unambiguous disavowal of

25   claim scope as required to depart from the meaning of the term provided in the written description."

26   3M, 350 F.3d at 1373, *citing Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 833 (Fed. Cir.

27   2003).

28   That is precisely the case here.  The applicant's remarks regarding the Pope reference during

1    prosecution cannot be given the broad disclaimer argued for by Kyphon, because to give such a

2    disclaimer would violate the rule established by *3M* and *Storage Tec*h.

3         Furthermore, even without the rule of *3M* and *Storage Tech.*, applicant's statements were

4    simply not a clear and unambiguous surrender of claim scope as urged by Kyphon.  As Medtronic

5    demonstrated in its Opening Brief, the statements upon which Kyphon relies are subject to different

6    interpretations.  Such ambiguous statements cannot be clear and unambiguous disclaimers of claim

7    scope.  *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005) ("There is no

8    'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable

9    interpretation"); *see also Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004)

10   (finding no disclaimer because "the statements in the prosecution history are subject to multiple

11   reasonable interpretations, they do not constitute a clear and unmistakable departure from the ordinary

12   meaning of the term [at issue]"); *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir.

13   2003) (concluding that a statement made during prosecution "is amenable to multiple reasonable

14   interpretations and it therefore does not constitute a clear and unmistakable surrender").

15        Moreover, one cannot read a limitation from a prior art specification into the claims, which is

16   what Kyphon attempts with the Pope patent.  *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370

17   n.5 (Fed. Cir. 2003).  (M. Br. at 19.)  Kyphon is asking the Court to enter an actual wall thickness

18   limitation of 0.0045 inches into the plain and clear claim language.  Given the state of the law, it is not

19   surprising that Kyphon's Responsive Brief completely ignored Medtronic's argument on this point.

20        The claim language merely states that the sleeve/balloon must be able to collapse about the

21   shaft.  No dimensional limitation appears in the term "both the sleeve and balloon being collapsible

22   about the shaft," and none should be added.

23   **V.    THE CLAIM TERMS IN THE '191 AND '856 PATENTS ARE CLEAR FROM THE
24         CLAIM LANGUAGE**

25        Kyphon consistently yet incorrectly argues that the'191 and '856 patents require an

26   "additional" or "extra" attachment between the catheter's inner and outer tubes.  (K. Br. at 3, 13.)  The

27   claims do not require such a limitation, and it is improper to read one into the claims with no basis

28   other than Kyphon's litigation-driven characterization of the invention.  *Teleflex, Inc. v. Ficosa N. Am.*

1   *Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002); *Dayco Prods.*, 258 F.3d at 1325.  As the Supreme Court

2   has stated "if we once begin to include elements not mentioned in the claim in order to limit such

3   claim…we should never know where to stop."  *McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110, 116

4   (1895).

5       **A.**    **"catheter shaft" ('191 patent/'856 patent)**

6           The claim language requires that the catheter shaft be made of coaxial tubes.  (M. Br. at 20-21.)

7   Thus, a Y-fitting of a catheter, which contains the coaxial tubes, is part of the catheter shaft.  In an

8   attempt to avoid infringement, Kyphon seeks to inject a non-existent limitation into the "catheter shaft"

9   term – that each tube be made from one piece.  Under this flawed interpretation, coaxial tubes inside

10  the Y-fitting are excluded.

11          Kyphon has not presented any evidence or argument to overcome the construction proposed by

12  Medtronic that is clear from the claim language itself, and as viewed in light of the specification.

13  Medtronic's proposed construction does not require adding the negative limitation – "***not*** including the

14  Y-fitting" – urged by Kyphon.  *Omega*, 334 F.3d at 1321-22 (holding that the claim construction was

15  improper where "[t]his additional negative limitation finds no anchor in the explicit claim language").

16  In fact, the specification plainly ***includes*** the Y-fitting as part of the "catheter shaft."  (M. Br. at 21-

17  22.)

18          As it does elsewhere, Kyphon fails to address the factual assertions made by Medtronic with

19  regard to the Simpson patent.  Specifically, Medtronic pointed out that the term "catheter shaft" was

20  added to claim 1 after the examiner had defined "catheter shaft" to include the Y-fitting.  (M. Br. at

21  22.)  Kyphon also fails to distinguish Medtronic's cited authority, which is directly on point.  *See*

22  *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1328-29 (Fed. Cir. 2001); *see also Torpharm, Inc.*

23  *v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003).  It is thus undisputed that Examiner

24  Thaler gave public notice that the "catheter shaft" does indeed include the Y-fitting.

25          Kyphon parses the claim language in an effort to distinguish "formed from" and "including".

26  This exercise is irrelevant when the Y-fitting indeed has coaxial tubes in it.  Kyphon also argues that

27  Medtronic's proposed construction results in a construction that conflicts with the claim language.  (K.

28  Br. at 13-14.)  However, Kyphon's argument relies not on claim language, but rather on a

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF               C06-02559 SI

characteristic of a commercial embodiment or accused device – certainly not a proper source of evidence for the correct claim construction.  *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330-31 (Fed. Cir. 2006).  Regardless, as Examiner Thaler made clear, the claim language only calls for the shaft as a whole to be flexible, not that every point along the shaft be able to flex.

Accordingly, all three types of intrinsic evidence – the claims, specification, and prosecution history – support an interpretation of "catheter shaft" which includes the Y-fitting.

### B.    "proximal region" ('191 patent/'856 patent)

The claim language concerning "proximal region" is clear.  The "proximal region" must be the area at the "proximal" end of the catheter shaft, as opposed to the "distal" end.  Medtronic's Opening Brief explained that Kyphon's proposed interpretation contradicts this well-known term of art, resulting in a "proximal region" that encompasses the center of the shaft up to the "distal region."  (M. Br. at 24-26.)  Kyphon does not dispute that its position requires the "proximal region" to be an extremely large area along the catheter shaft.

Medtronic also established that "proximal region" was the subject of numerous statements by both the applicant and examiner during the 12 years of combined prosecution of the '191 and '856 patents.  (M. Br. at 26-29.)  Specifically, in the '856 patent prosecution, Examiner Thaler stated that the proximal region is "at the extreme proximal end," "a miniscule sliver," and "adjacent the proximal end."  (*Id.* at 26.)  Moreover, the Board of Patent Appeals and Interferences quoted claim 1 of the '191 patent in its entirety and commented that "Simpson does not disclose an outer tube … being attached to an inner tube at a location ***between the proximal and distal ends of the catheter*** to resist axial telescoping of the inner tube with respect to the outer tube, as required by independent claim 1."  (M. Br. at 27; emphasis added.)  Kyphon's response to this compelling intrinsic evidence is to ignore it.  Kyphon does not address any statement in the '856 patent prosecution or the Board's statement quoted above.  As a result, the clear claim language and prosecution history are undisputed.  Instead of addressing this evidence, Kyphon cites to earlier statements in the prosecution that were rejected and superseded.  (K. Br. at 15-16.)  Kyphon also quotes a passage in the Board's opinion discussing the

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                          C06-02559 SI

1    preferred embodiment using numbered elements disclosed in the specification.  (*Id*. at 16.)  But the

2    claims are at issue here, not the specification.

3         Kyphon also attempts to find cover behind alleged "prior art" in the field, asserting that the

4    claimed attachment must somehow be a "third attachment."  (K. Br. at 13.)  However, the claim

5    language only requires two attachments (the other being the "distal connection").  As such, Kyphon's

6    "prior art" position fails.  There is no prior art reference that discloses both the location ("between the

7    proximal region of the catheter shaft and said distal connection") and purpose ("to resist axial

8    telescoping") requirements of the claims.

9         Kyphon argues that "[i]t is well established that 'the prosecution history limits the

10   interpretation of claim terms so as to exclude any interpretation that was disclaimed during

11   prosecution.'  *Springs Window Fashions LP v. Novo Indus. LP*, 323 F.3d 989, 994 (Fed. Cir. 2003)

12   (quoting *Pall Corp. v. PTI Techs. Inc*., 259 F.3d 1383, 1392 (Fed. Cir. 2001))."  (*See* K. Br. at 17.)

13   What Kyphon does not say is that the *Pall* case was vacated by the Supreme Court.  *See PTI Techs*.,

14   *Inc. v. Pall Corp.*, 535 U.S. 1109 (2002).

15        Further, the *Springs Window* case does not apply to these facts.  In *Springs Window*, one of the

16   Federal Circuit's motivations for finding a disclaimer was that the applicant's "statements

17   distinguishing Pluber were detailed, consistent, and repeated."  *Springs Window*, 323 F.3d at 994.

18   Further, the applicant "never retracted any of his statements distinguishing Pluber nor did he acquiesce

19   in the examiner's comments regarding the overlapping scope of Pluber" and "therefore, must be held to

20   the restrictive claim construction that was argued during prosecution."  *Id*. at 995.

21        That situation is different from and inapposite to the present facts.  Here, the applicant *did*

22   acquiesce in the Examiner's and the Board's construction of the term.  This is manifest when the

23   prosecution history of the '856 patent is considered, as it must be, for the claim terms are similar.  *See*

24   *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (applicants'

25   statements made during prosecution of a subsequent patent may be relied upon during claim

26   construction of a term in a prior related patent).  Reading a disclaimer into the statements as Kyphon

27   does would result in a situation where reasonable competitors would not know how to construe the

28   same term between the '191 and '856 patents.  *Cf. Springs Window*, 323 F.3d at 996.

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                        C06-02559 SI

It is not possible that a person of ordinary skill in the art, when reviewing the prosecution history, would stop reading on November 14, 1994, even though prosecution continued until January 30, 2001. Yet that is the basis for Kyphon's entire position.  The statements made by the applicant on November 14, 1994, were made only once.  Immediately after the applicant made the statements, the examiner expressly rejected them.  The applicant *accepted* the rejection and did not further dispute it or modify the term "proximal region."  By accepting the examiner's position, the applicant superseded the earlier statements.

Any doubt as to the meaning of "proximal region" was removed when the examiner referred to the proximal region as "at the extreme proximal end", "a miniscule sliver", and "adjacent the proximal end" in the '856 patent prosecution.  (M. Br. at 26.)  The applicant accepted these statements and thus they are controlling.

Kyphon has previously conceded the principle that a claim may be broadened during prosecution, and that litigants may not later "turn back the clock" on the clear intrinsic record:

> The take away from that is, especially in a case where the claims started out narrower, and ended up broader, courts just don't turn back the clock absent just a compelling, compelling reason.  And you – here again my favorite case, *Liebel-Flarsheim*, there are other cases we have cited that say the same thing.

(DeBruine Decl., Ex. Y, April 19, 2005, Transcript at 32:16-22.)

Kyphon's current argument ignores the prosecution history of the '856 patent, including the interview with Examiner Thaler, and the Yock reference.  In sum, Kyphon ignores the entire public-notice function of the intrinsic evidence by acting as if the prosecution history of the '856 patent does not exist.

Finally, Kyphon argues against Medtronic's caselaw, which demonstrates that, on the record of the '191 and '856 patents, there can be no disclaimer.  In so arguing, Kyphon distinguishes a case never even cited by Medtronic.  (*See* K. Br. at 17-18) (distinguishing *Inverness Medical Switzerland GmbH v. Warner Lambert Co.*, 309 F.3d 1373 (Fed. Cir. 2002).)  Medtronic relied, of course, on the holding of *Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365 (Fed. Cir. 2002).  (M. Br. at 29.)  The *Inverness/Princeton* case cited by Medtronic found no disclaimer

where the applicant made certain statements that were rejected by the examiner, who allowed the claims for reasons different than the applicant's statements.  (*Id.*)  Kyphon's arguments in this regard should be ignored.

**C.**   **"guidewire lumen" ('191 patent/'856 patent)**

The "guidewire lumen" is defined in the claim itself:  "wherein the shaft is formed from an inner tube defining a guidewire lumen therethrough."  Thus, the "guidewire lumen" is simply the passage of the inner tube.  (M. Br. at 29.)

Kyphon urges the Court to impermissibly read a function, "for passage of the guidewire over which the catheter is advanced," into the asserted claim term.  However, the term itself does not require any specific function.  Moreover, the claim does not require the presence of a guidewire, much less one over which the catheter is advanced.  Reading a functional limitation into a purely structural claim results in a "nonsensical result."  *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005); *Teleflex*, 299 F.3d at 1326.  Once again, Kyphon concedes that Medtronic's legal position is correct by not even attempting to address the *Toro Co. v. White Consul. Indus. Inc*., 266 F.3d 1367, 1371 (Fed. Cir. 2001), and *Brookhill-Wilk 1*, 334 F.3d at 1301, cases cited by Medtronic.  (M. Br. at 30.)

Finally, even assuming that the "guidewire lumen" must be adapted to receive a guidewire does not mean that the device must have a guidewire.  Nor does it prevent such a device from infringing the claims.  Kyphon's arguments in favor of its proposed construction must be rejected as a flawed attempt to import limitations from the specification.

**D.**   **"means for communicating the annular inflation lumen with the interior of the balloon to facilitate inflation and deflation of the balloon, the inflation lumen comprising the sole lumen in communication with the interior of the balloon" ('191 patent)**

**1.**   **This Element Is Not Subject to § 112 ¶ 6.**

Medtronic's Opening Brief established that "means for communicating" should not be interpreted under § 112 ¶ 6 because claim 1 of the '191 patent discloses sufficient structure for performing the "communicating" function.  (M. Br. at 30-31.)  This structure is ***an opening associated with the outer tube within the balloon.***

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                                          C06-02559 SI

1      The intrinsic evidence supports Medtronic's interpretation.  First, the claim language only

2    requires an opening in the outer tube, since the lumen inside the outer tube (the "inflation lumen") is

3    "the sole lumen in communication with the interior of the balloon." (*Id.* at 32.)

4      Additionally, claim 3 of the '191 patent is dependent on claim 1 and states that the "means for

5    communicating" must include "at least one aperture associated with the outer tube."  Medtronic's

6    position is in accordance with dependent claim 3, whereas Kyphon's position ***contradicts*** claim 3.  (*Id.*

7    at 33.)

8      Finally, Examiner Thaler expressly stated that "means for communicating" was "the opening at

9    the end of the annular inflation lumen 41," in his rejection in view of Yock.  As depicted in

10   Medtronic's Opening Brief, item 41 is an opening at the distal end of the outer tube.  (M. Br. at 34.)

11     Even though Kyphon itself proposes an aperture (opening) as the means for communicating,

12   Kyphon argues that there is insufficient structure in the claim to perform the function of

13   communicating the inflation lumen with the balloon.  (K. Br. at 22.)  Kyphon's sole argument against

14   an "opening associated with the outer tube" as sufficient structure is the following statement:

15            This is illogical – there is no support for Medtronic's position that the
16            'means for communicating' a first thing with a second thing can be the
              first thing.  (K. Br. at 21.)

17

18     This statement appears to suggest that the opening in a tube cannot be the means for

19   communicating the tube with the balloon.  However, logic and the intrinsic evidence are against

20   Kyphon.

21     Kyphon, however, does not attempt to explain how Medtronic's position is illogical.  Nor does

22   Kyphon explain how its interpretation could possibly be consistent with claim 3.  Clearly, it cannot.

23   That alone is fatal to Kyphon's position.  Further, Kyphon does not dispute Examiner Thaler's express

24   definition in the prosecution, which graphically depicted an opening at the end of the tube in Yock as

25   the means for communication.  Instead, Kyphon asserts that Medtronic's interpretation is "physically

26   impossible" because the claimed attachment must "plug" the entire inflation lumen.  Kyphon goes on

27   to argue that Medtronic's interpretation reads the plugged inflation lumen "out of the claims."  (K. Br.

28   at 21.)

1    A review of claim 1 of the '191 patent demonstrates that there is **no limitation** that the

2  attachment must "plug" the inflation lumen.  Thus, Medtronic reads nothing out of the claims.  Rather,

3  it is Kyphon who seeks to **read in** a non-existent limitation, which is improper and should be rejected.

4    Furthermore, Kyphon did not attempt to distinguish Medtronic's reliance on *ASM Am., Inc. v.*

5  *Genus, Inc*., 260 F. Supp.2d 827, 863 (N.D. Cal. 2002) (Laporte, Mag. J.).  If there is no dispute that a

6  tube has an opening at each end, and there is no dispute that an "opening" is structure, then Medtronic

7  can only speculate as to how Kyphon disputes that the opening at the distal end of the tube is sufficient

8  structure for the "means for communicating."

9
          **2.     If The Term is Interpreted Under § 112 ¶ 6, Medtronic's Position Remains**
10              **Correct.**

11   The "means for communicating" is an opening associated with the outer tube, even under § 112

12 ¶ 6.  The function is "communicating the annular inflation lumen with the interior of the balloon to

13 facilitate inflation and deflation of the balloon."  While the parties agree on the function, they disagree

14 on the structure disclosed in the specification for performing that function.  Kyphon argues that the

15 corresponding structure is "a pair of circumferentially spaced apertures formed in the wall of the outer

16 tube within the balloon."  Kyphon recites entirely too much structure to meet the statutory requirement

17 of performing the recited function.

18   The structure corresponding to a function of a claim written in means-plus-function format

19 must cover all embodiments, *including equivalents thereof*, disclosed in the specification for

20 performing the function.  *Ishida Co. Ltd. v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000).  The

21 specification discloses one embodiment of the structure corresponding to the function as "a pair of

22 circumferentially spaced (e.g. 180°) apertures 40…within the balloon to communicate the inflation

23 lumen 24 with the interior of the balloon so as to permit inflation and deflation."  (Ex. C., '191 patent,

24 Col. 4, lines 18-23.)

25   The Summary of the Invention also describes a structure for performing the claimed function:

26 "[o]ne lumen, for inflation and deflation of the balloon, extends from a fitting at the proximal end of

27 the catheter and opens distally into the interior of the balloon.  The balloon is inflated with a liquid

28 from the balloon through the inflation/deflation lumen."  (*Id*. at Col. 1, lines 35-40.)

1    Additionally, the specification states that "[t]he annular lumen defined between the inner tube

2    and the outer tube communicates with the interior of the balloon and serves as the inflation/deflation

3    lumen." (*Id.* at Col. 2, lines 33-35.)  Therefore, the opening in the annular lumen is a structure

4    corresponding to the function.  Because the outer tube terminates within the balloon, (*id*. at Col. 4, lines

5    7-9), the proper construction of the structure corresponding to the function of "communicating

6    the annular inflation lumen with the interior of the balloon to facilitate inflation and deflation of the

7    balloon" is "an opening at the distal end of the outer tube within the balloon."

8    To construe the structure of this element as Kyphon does would require the Court to

9    impermissibly ***read out*** at least one embodiment taught by the specification as corresponding to the

10   function.  Only the corresponding structure ***necessary to perform the function*** is the correct

11   corresponding structure.  *Omega*, 334 F.3d at 1321; *Northrop Grumman Corp. v. Intel Corp*., 325 F.3d

12   1346, 1352 (Fed. Cir. 2003).  The structure identified by Medtronic is the structure corresponding to

13   the function of "communicating the annular inflation lumen with the interior of the balloon to facilitate

14   inflation and deflation of the balloon."

15   In its analysis under § 112 ¶ 6, Kyphon did not consider "equivalents" of the structure

16   disclosed.  But the statute includes equivalents.  Under the traditional "function, way, result" test, "an

17   opening associated with the outer tube within the balloon" is an equivalent of "a pair of

18   circumferentially spaced apertures formed in the wall of the outer tube within the balloon."  *Kemco*

19   *Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).  Thus, Medtronic's

20   position is correct even if the structure of the "means for communicating" is that proposed by Kyphon

21   because Medtronic's position is at least an equivalent of the structure.  Specifically, the function

22   ("communicating the annular inflation lumen with the interior of the balloon to facilitate inflation and

23   deflation of the balloon"), way (a hole that allows inflation fluid to inflate the balloon by positive

24   pressure and through which the same fluid is withdrawn for deflation under negative pressure) and

25   result (inflation and deflation of the balloon in response to a pressure gradient applied to the inflation

26   lumen) are the same.

27

28

E.   **"means at the proximal end of the catheter for accessing**
     • **each of the guidewire and inflation lumens" ('191 patent)**
     • **the inflation lumen" ('856 patent)**

### 1.   These Limitations Are Not Subject to § 112 ¶ 6

Kyphon again tries to limit the terms of the Medtronic patents by impermissibly adding non-existent limitations to "means … for accessing."  Kyphon also fails again to address the language of other claims, conceding the correctness of Medtronic's position.

Medtronic's Opening Brief established that the lumens to be accessed are defined by the claim language as being the insides of the two tubes.  (M. Br. at 36.)  Additionally, Medtronic explained that the means necessary to access these lumens is an opening at the proximal end of each tube. Id.  Since the claim language provides sufficient structure for performing this function, "means … for accessing" should not be interpreted under § 112 ¶ 6.  *Id.*

Kyphon disagrees with this position and argues that "[o]penings alone are not sufficient to access the lumens."  (K. Br. at 20.)  However, Kyphon provides no support for its conclusory statement.  In fact, Kyphon's position contradicts the language of other claims in the '856 patent, which clearly state that openings alone *are* sufficient to access the lumens.  Specifically, claims 6 and 7 of the '856 patent include elements involving "accessing" the lumens and *only* recite "openings" to perform this function.  (M. Br. at 36.)  A comparison between these claims and the claim terms at issue (claim 9 of the '856 patent and claim 1 of the '191 patent) demonstrates this:

| **'856 Patent/Claim 9** | **'856 Patent/Claim 6** |
|---|---|
| 9. … means at the proximal end of the catheter for accessing the inflation lumen. | 6. … the proximal end of the catheter having an opening for accessing the inflation lumen. |
| **'191 Patent/Claim 1** | **'856 Patent/Claim 7** |
| 1. … means at the proximal end of the catheter for accessing each of the guidewire and inflation lumens. | 7.   The catheter defined in claim 6 further comprising an opening at the proximal end of the catheter lumen for accessing the guidewire. |

1    Kyphon does not even attempt to explain away the fact that the "means" for accessing at issue

2    is addressed in claims 6 and 7 as an opening.  As such, these points are undisputed.

3    Nor does Kyphon dispute the fact that Examiner Thaler defined the "proximal end of the

4    catheter" as the proximal end of the Y-fitting.  (M. Br. at 36-38.)  As such, it is the openings at the

5    proximal end of the Y-fitting, not the Y-fitting itself, that is the "means at the proximal end of the

6    catheter for accessing" the lumens.

7    Furthermore, Kyphon did not attempt to distinguish Medtronic's reliance upon the holding of

8    *ASM Am.*, 260 F. Supp.2d at 863, that an aperture provides sufficient structure to remove a term from

9    the means-plus-function analysis of 35 U.S.C. § 112, ¶ 6.  If there is no dispute that a tube has an

10   opening at each end, and there is no dispute that an "opening" is structure, then Medtronic is left to

11   wonder how Kyphon disputes that the opening at the proximal end of the Y-fitting is sufficient

12   structure for the "means for accessing."

13           2.      **If the Term is Interpreted Under § 112 ¶ 6, Medtronic's Position Remains
14                    Correct.**

15   The function is "accessing each of the guidewire and inflation lumens."  While the parties agree

16   on the function, they disagree on the structure disclosed in the specification for performing that

17   function.  Kyphon argues that the corresponding structure is "a Y-fitting and a pair of flexible proximal

18   tubes, one of the proximal tubes being in communication with the guidewire lumen and the other

19   proximal tube being in communication with the annular inflation lumen, and fittings at the proximal

20   ends of the proximal tubes by which appropriate fluid devices such as syringes, inflation devices or the

21   like may be connected."  (K. Br. at 19.)  Again, Kyphon recites entirely too much structure to meet the

22   statutory requirement of performing the recited function.

23   The structure corresponding to the recited function that is disclosed in the specification is the

24   guidewire and inflation lumen openings at the proximal end of the Y-fitting.  (Ex. C, '191 patent, Col.

25   1, lines 34-42.)  While the structure proposed by Kyphon is found in the specification (*id*. at Col. 3,

26   lines 54-63), that structure is ***not necessary*** to perform the function.  Only the corresponding structure

27   necessary to perform the function is the correct corresponding structure.  *Omega*, 334 F.3d at 1321;

28

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                                      C06-02559 SI

1    *Northrop Grumman*, 325 F.3d at 1352.  The structure identified by Medtronic is the structure

2    corresponding to the function of "accessing each of the guidewire and inflation lumens."

3         In its analysis under § 112 ¶ 6, Kyphon did not consider "equivalents" of the structure

4    disclosed.  But the statute includes equivalents.  Under the traditional "function, way, result" test,

5    "openings at the proximal end of the catheter" are equivalents to the myriad of structure alleged by

6    Kyphon.  *Kemco*, 208 F.3d at 1364.  Thus, Medtronic's position is correct even if the structure of

7    "means … for accessing" is that proposed by Kyphon because Medtronic's interpretation is at least an

8    equivalent of that structure.  Specifically, the function ("accessing each of the guidewire and inflation

9    lumens"), way (providing an entry to the proximal ends of the lumens) and result (both lumens are able

10    to receive entry) are the same.

11
12      **F.**      <u>**"at least one aperture associated with the outer tube to facilitate inflation and**</u>
            <u>**deflation of the balloon" ('856 patent)**</u>

13         The meaning of this term is clear from the claim language.  An "aperture" is an opening, and to

14    be "associated with the outer tube" is simply to be part of the outer tube in some fashion.  (M. Br. at

15    38.)

16         Kypon's position is yet another example of impermissibly adding a non-existent limitation into

17    clear claim language.  The claims say nothing about the wall of the outer tube.  The language of the

18    claims is clear and is totally devoid of the required hook to read in a limitation.  *See Renishaw PLC v.*

19    *Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248-49 (Fed. Cir. 1998); *see also* DeBruine Decl., Ex.

20    Y, April 19, 2005, Transcript at 144:23 ("There is no hook at all in the claim here, and Disc-O-Tech

21    does not argue otherwise").

22         Kyphon's only support for its inclusion of a wall in the interpretation is not the claim language,

23    but the specification.  (K. Br. at 22.)  ("Medtronic's construction ignores how the specification

24    discloses this geometry of the claimed catheter and should be rejected.")  However, the preferred

25    embodiment disclosed in the specification cannot be read into the claim language.

26         Kyphon's proposed interpretation also includes an "opening in … a structure associated with

27    the outer tube."  Medtronic's Opening Brief pointed out that the distal end of the outer tube is "a

28    structure associated with the outer tube." (M. Br. at 33.)  Kyphon's brief is silent on this issue.  Thus,

MEDTRONIC REPLY CLAIM CONSTRUCTION BRIEF                                            C06-02559 SI

1  Kyphon does not dispute that its proposed interpretation is in agreement with Medtronic's proposed

2  interpretation.  This is further proof that Medtronic's interpretation should be accepted.

3         Moreover, as the chart below demonstrates, this term is virtually identical to the "means for

4  communicating" term in claim 1 of the '191 patent:

| **'191 Patent/Claim 1** | **'856 Patent/Claim 9** |
| --- | --- |
| "… means for communicating the annular inflation lumen with the interior of the balloon to facilitate inflation and deflation of the balloon" | "… at least one aperture associated with the outer tube to facilitate inflation and deflation of the balloon" |

In view of the similarity between these terms, Medtronic's proposed interpretation for each is

similar:

| **'191 Patent/Claim 1:** An opening associated with the outer tube … for allowing inflation and deflation of the balloon. | **'856 Patent/Claim 9:** At least one opening associated with the outer tube to allow for inflation and deflation of the balloon. |
| --- | --- |

15         Although Medtronic pointed out the similarities in claim language, function, and interpretations

16 of these terms (M. Br. at 33), Kyphon's brief is silent on this issue.  Those issues are thus undisputed.

17 **VI.    CONCLUSION**

18         The claim terms at issue in this case are clear from the claim language itself.  Importantly, the

19 great weight of legal precedent also favors Medtronic's proposed claim constructions.  Kyphon's

20 attempts to find an unlimited number of disclaimers and import limitations from the specification,

21 prosecution history and prior art fly in the face of the Federal Circuit's well-settled precedent and

22 should be rejected.  Medtronic respectfully requests this Court to adopt its claim constructions.

24 Dated: April 2, 2007                      AKIN GUMP STRAUSS HAUER & FELD LLP

25                                           By: _____/s/_____ _____

26                                               Sean P. DeBruine

27                                           Attorney for Plaintiffs
                                            MEDTRONIC, INC.,
28                                          MEDTRONIC VASCULAR, INC.,

1　　　　　　　　　　　MEDTRONIC USA, INC.,
2　　　　　　　　　　　MEDTRONIC VASCULAR GALWAY, LTD.,
　　　　　　　　　　　　MEDTRONIC SOFAMOR DANEK, INC., and
3　　　　　　　　　　　SDGI HOLDINGS, INC.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28